# IN THE SUPREME COURT OF TEXAS

════════════

No. 19-1122

════════════

KINDER MORGAN SACROC, LP; KINDER MORGAN CO₂CO., LP; KINDER MORGAN PRODUCTION CO., LP; AND KINDER MORGAN PRODUCTION CO., LLC, PETITIONERS,

v.

SCURRY COUNTY; SNYDER INDEPENDENT SCHOOL DISTRICT; SCURRY COUNTY JUNIOR COLLEGE DISTRICT D/B/A WESTERN TEXAS COLLEGE; AND SCURRY COUNTY HOSPITAL DISTRICT D/B/A COGDELL MEMORIAL HOSPITAL, RESPONDENTS

════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE ELEVENTH DISTRICT OF TEXAS

════════════════════════

**Argued February 4, 2021**

JUSTICE GUZMAN delivered the opinion of the Court.

JUSTICE BLAND did not participate in the Court's decision.

When a tax appraisal review board denies a taxing unit's challenge to the appraisal rolls, the taxing unit is "entitled to appeal" to the district court within sixty days of the board's order.[1] In this ad valorem tax dispute, the taxing units timely sought judicial review of a board order declining to reappraise the value of mineral-interest property claimed to be undervalued on the tax rolls. After the lower courts declined to dismiss the tax appeal under the Texas Citizens Participation Act[2] (TCPA), the affected taxpayer appealed to this Court, asserting for the first time

---

[1] TEX. TAX CODE §§ 42.031(a), .21(a).

[2] TEX. CIV. PRAC. & REM. CODE §§ 27.001–.011. Although the TCPA was extensively amended after the petition for judicial review was filed, the parties do not contend the differences are material to the issues presented in this appeal. Nevertheless, unless otherwise indicated, we cite to the applicable version of the statute.

that the trial court lacks jurisdiction over the tax appeal. In the alternative, the taxpayer argues the lower courts erroneously ruled the TCPA dismissal motion was untimely because it was not filed within sixty days after the taxing units served their original petition for judicial review.[3]

Regarding the jurisdictional issue, the taxpayer contends the taxing units' timely filed petition for judicial review is void and therefore ineffective to invoke the trial court's jurisdiction. The taxpayer charges the taxing units with hiring an attorney to act as a "tax ferret" under an unauthorized contingent-fee contract and further asserts that all actions taken on behalf of the taxing units under the legal-services contract are necessarily void, including filing the petition for judicial review. We hold that any invalidity of the legal-services contract—a matter we assume without deciding—does not invalidate the taxing units' bona fide attempt to invoke the trial court's jurisdiction. At worst, perfection of the appeal would be defective, not void.

On the TCPA issue, the taxpayer argues the taxing units' second amended petition restarted the TCPA's motion-filing deadline by adding new factual allegations claiming the mineral-interest property was undervalued due to taxpayer fraud. In *Montelongo v. Abrea*, an opinion issued today, we explain that an amended or supplemental pleading "triggers a new sixty-day period" for filing a TCPA motion to dismiss as to (1) newly added parties, (2) "new essential facts to support previously asserted claims," or (3) "new legal claims or theories involving different elements than the claims or theories previously asserted."[4] In this case, the taxing units' cursory original petition for review alleged property had been undervalued and effectively omitted from the tax rolls but did not state the cause of the undervaluation or omission or assert facts implicating the taxpayer in

---

[3] *See* 589 S.W.3d 889, 893, 900 (Tex. App.—Eastland 2019); Act of May 18, 2011, 82d Leg., R.S., ch. 341, § 2, 2011 Tex. Gen. Laws 961, 962 (amended 2019) (current version at TEX. CIV. PRAC. & REM. CODE § 27.003(b)) (stating that, absent "good cause," "[a] motion to dismiss a legal action under this section must be filed not later than the 60th day after the date of service of the legal action").

[4] ___ S.W.3d ___, ___ (Tex. 2021) [Cause No. 19-1112, slip op. at 2].

wrongdoing. When the taxing units filed an amended pleading alleging undervaluation and omission of the taxpayers' mineral interests resulted from taxpayer fraud, those new factual allegations commenced a new sixty-day filing period under the TCPA as to those allegations, and the taxpayers' motion to dismiss was timely filed in response. We therefore reverse the court of appeals' judgment and remand to the trial court for further proceedings.

## I. Background

Kinder Morgan[5] owns substantial oil and gas interests in Scurry County that are subject to ad valorem property taxation.[6] Several taxing units[7]—Scurry County, Snyder Independent School District, Scurry County Junior College District d/b/a Western Texas College, and Scurry County Hospital District d/b/a Cogdell Memorial Hospital (collectively, the Taxing Units)—filed petitions before the Scurry County Appraisal Review Board (ARB) challenging (1) the appraisal value of a "category of property" in the county "but not the appraised value of a single taxpayer's property" and (2) the "exclusion of property from the appraisal records." Without identifying particular property or specific taxpayers, the Taxing Units asserted "Category G property," meaning "Oil and Gas, Minerals, and other subsurface interests," had been undervalued and "erroneously and incorrectly omitted (in toto and ab initio)" from the appraisal rolls. The Taxing Units petitioned the ARB to compel the Scurry County Appraisal District (SCAD) to reappraise Category G

---

[5] Petitioners are Kinder Morgan CO$_2$Co., LP and Kinder Morgan Production Co., LLC, Individually and as Successors in Interest to Kinder Morgan SACROC, LP and Kinder Morgan Production Co., LP.

[6] *See* TEX. TAX CODE § 1.04(2)(F) ("'Real Property' means . . . an estate or interest . . . in a [mineral in place].").

[7] The term "taxing unit" refers to "a county, an incorporated city or town (including a home-rule city), a school district, a special district or authority (including a junior college district, a hospital district, a district created by or pursuant to the Water Code, a mosquito control district, a fire prevention district, or a noxious weed control district), or any other political unit of this state, whether created by or pursuant to the constitution or a local, special, or general law, that is authorized to impose and is imposing ad valorem taxes on property even if the governing body of another political unit determines the tax rate for the unit or otherwise governs its affairs." *Id.* § 1.04(12).

3

property in Scurry County for the current year and to back-appraise that property in all prior years as allowed by law, including the preceding five tax years.

The ARB held a hearing on the challenge petitions, at which point the Taxing Units focused on the appraisal of Kinder Morgan's property. The Taxing Units argued a substantial discrepancy existed between the appraised value of the property as determined by SCAD's privately retained appraiser and the value the Taxing Units' experts derived from information in Kinder Morgan's sworn filings with federal and state governmental entities.[8] The Taxing Units observed, as a general proposition, that property undervalued on the appraisal roll due to taxpayer fraud can be viewed as "omitted" from the appraisal rolls under a theory that a fraudulently procured appraised value is deemed void *ab initio*. But the Taxing Units candidly acknowledged they could not determine the reason for the variance in the appraised value of Kinder Morgan's property nor could they say what caused the alleged "error," noting it could be due to misrepresentation, misunderstanding, or mistake on the part of the county's appraiser. SCAD's Chief Appraiser and its privately retained appraiser both testified at the hearing and, when questioned by SCAD's attorney, both denied the existence of fraud or even suspicion of fraud. SCAD's attorney further noted there was not "one iota of evidence that Kinder Morgan or . . . any other property owner defrauded the appraisal district."

The ARB denied the challenge petitions, and as authorized by Section 42.031 of the Texas Tax Code, the Taxing Units timely appealed to the district court, naming the appraisal district and Kinder Morgan as defendants.[9] In the original petition for judicial review and writ of mandamus, the Taxing Units asked the trial court "to perform a *de novo* review of the valuation of [Kinder

---

[8] The private appraiser testified that he normally relies on information directly from the property owner or production company, but he did not state whether he received such information directly from Kinder Morgan.

[9] *See* TEX. TAX CODE §§ 42.031(a), .06, .21.

4

Morgan's] mineral interest real property . . . and [either] fix the correct values or order the re-appraisal and back appraisal" of mineral interest property that was "omitted (*in toto* or *ab initio*)."[10]  Without pleading any factual allegations, the petition described Kinder Morgan's mineral-interest property as "erroneously and incorrectly omitted from appraisal," stated that the trial could should determine the "accurate values," and asserted that SCAD is required to reappraise Kinder Morgan's mineral-interest real property.  Three cases and Chapters 25 and 41 of the Tax Code were cited, without discussion, in support of these propositions.  The original petition refers to Kinder Morgan only with respect to its ownership of the affected property.

After answering,[11] Kinder Morgan responded with a Rule 91a motion to dismiss in which it (1) asserted that the Taxing Units failed to identify which of the two challenges from the appraisal proceeding were being pursued on appeal; (2) noted that the Taxing Units failed to identify who was responsible for the alleged appraisal error; and (3) argued that both challenges from the appraisal proceeding were subject to dismissal because the petition lacked "*any* facts in support of either cause of action that could establish a viable, legally cognizable right to relief or provide the Kinder Morgan Defendants with fair notice of the facts on which the claims are based."[12]

Before responding to the 91a motion, the Taxing Units amended the petition for review to expressly abandon claims pertaining to the level of appraisals of any category of property in the district and to clarify that the only issue on appeal was the exclusion of property from the appraisal record.  Specifically, "as to the mineral interest real property of the Kinder Morgan Entities in

---

[10] *See id.* § 42.23(a) (review is by trial de novo).

[11] In addition to a general denial, Kinder Morgan asserted the Taxing Units failed to exhaust administrative remedies, failed to name necessary parties as required by the Tax Code, and misidentified certain Kinder Morgan parties.  The defendants were subsequently renamed as the petitioners in this appeal.  *See supra* note 5.

[12] *See* TEX. R. CIV. P. 91a (governing dismissal for baseless causes of action).

5

Scurry County," the amended petition stated that "there were exclusions and omissions of property, *in toto* and/or *ab initio*." In recounting the factual basis for the contention that Kinder Morgan's property had been undervalued and effectively omitted from the tax rolls, the Taxing Units noted that SCAD's retained appraiser had made significant valuation errors with respect to similar mineral interest property.

The Taxing Units did not assert, however, that Kinder Morgan had misrepresented information to the county appraiser, stating only that SCAD's retained appraiser achieved a wildly different valuation of Kinder Morgan's mineral interest property than the Taxing Units' retained experts and the Taxing Units had "sought for many months a rational explanation for the variance." The petition also included a new paragraph identifying Kinder Morgan as a proper party to the suit because (1) affected property owners are required parties[13] and (2) taxpayers are required "to provide accurate information and to pay their accurately calculated tax amounts."

A few weeks later, and contemporaneously with their response to the Rule 91a motion, the Taxing Units filed a second amended petition for review, which added an allegation that "[Kinder Morgan] knowingly and purposefully provided inaccurate and/or incomplete information to be relied upon by [the county's appraiser] in an effort to evade payment of taxes[.]" On receipt of this filing, Kinder Morgan withdrew its Rule 91a motion and filed a motion to dismiss under the TCPA. The TCPA dismissal motion argued that the second amended petition implicated, for the first time, Kinder Morgan's constitutional right to speak freely and petition the government.[14] The Taxing Units objected to the timing of the TCPA motion, arguing that the motion had to be filed

---

[13] TEX. TAX. CODE § 42.21(b) ("A petition for review brought under Section 42.031 must be brought against the appraisal district and against the owner of the property involved in the appeal.").

[14] Act of May 18, 2011, 82d Leg., R.S., ch. 341, § 2, 2011 Tex. Gen. Laws 961, 962 (amended 2019) (current version at TEX. CIV. PRAC. & REM. CODE § 27.003 (a)); *see id.* at 961-63 (amended 2019) (current version at TEX. CIV. PRAC. & REM. CODE §§ 27.001(3)–(4), (6), .005(b)(1)(A)–(B)).

6

within sixty days after service of the original petition for judicial review because that filing provided fair notice that Kinder Morgan's communications with respect to the appraised value of its property were at issue.

The TCPA motion was filed 110 days after service of the original petition for judicial review, 53 days from the first amended petition, and 34 days from the second amended petition. The trial court denied the motion as untimely because more than sixty days had elapsed from service of the original petition. In a letter explaining the ruling, the court concluded that Kinder Morgan's "only purported exercise of 'free speech' . . . is its rendition and valuation of mineral properties for ad valorem tax purposes," which "has been at issue since [the Taxing Units'] initiation of these [appeal] proceedings." The court also summarily rejected Kinder Morgan's bid for a "good cause" extension of the filing deadline.[15]

On interlocutory appeal,[16] the court of appeals affirmed, holding that the original petition's allegation of erroneous and incorrect omissions from the appraisal record gave fair notice of all possible theories that could cause such an omission.[17] Citing the three cases referenced in the original petition, the court explained that "omitted" property includes (1) property improperly exempted from the tax roll and (2) property undervalued due to taxpayer fraud.[18] The court found the original petition met the fair notice pleading standard on the basis that taxpayer fraud is a "subset of the broad allegations asserted in the original petition."[19]

---

[15] *See* Act of May 18, 2011, 82d Leg., R.S., ch. 341, § 2, 2011 Tex. Gen. Laws 961, 962 (amended 2019) (current version at TEX. CIV. PRAC. & REM. CODE § 27.003(b)) ("[T]he court may extend the time to file a motion under this section on a showing of good cause.").

[16] *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(12).

[17] 589 S.W.3d 889, 900 (Tex. App.—Eastland 2019).

[18] *Id*. at 899.

[19] *See id*. at 900.

7

In further concluding that Kinder Morgan failed to establish good cause for an extension, the court noted that Kinder Morgan chose to file a Rule 91a motion rather than filing special exceptions to require the Taxing Units to plead with greater specificity.[20]  The court opined that the "intentional choice to proceed with serial motions, rather than expeditiously seeking all relief to which they might have been entitled, caused significant delay in the resolution of the case."[21]

Kinder Morgan filed a petition for review in this Court, urging that its TCPA motion was timely because (1) the TCPA requires more than mere notice pleading,[22] and (2) even if mere notice pleading is sufficient, the original petition did not provide fair notice that the Taxing Units were relying on a factual theory of taxpayer fraud, so that petition did not trigger the TCPA filing deadline with respect to any claim based on the fraud allegations.  In the alternative, Kinder Morgan claims good cause exists for an extension of the TCPA filing deadline because its first-filed Rule 91a dismissal motion substantively served as special exceptions to the Taxing Units' original petition and, in fact, prompted the Taxing Units to twice amend their petition to plead with greater specificity.

In its reply to the Taxing Units' response, Kinder Morgan also raised a new issue it presents as a threshold matter of subject-matter jurisdiction requiring dismissal of the judicial-review suit without regard to timeliness of the TCPA motion.  As the merits brief elaborates, Kinder Morgan contends that the Taxing Units' attorney was employed under a "tax ferret contract" that is void because it provides for compensation on a contingent-fee basis without approval from appropriate state officials.  Kinder Morgan argues that the effect of a void legal-services contract is that all

---

[20] *Id.* at 902.

[21] *Id.*

[22] *See* TEX. R. CIV. P. 45, 47; *see also In re Lipsky*, 460 S.W.3d 579, 590 (Tex. 2015) (orig. proceeding) ("Our procedural rules merely require that the pleadings provide fair notice of the claim and the relief sought such that the opposing party can prepare a defense . . . [but the TCPA] requires more[.]").

services the attorney provided under the contract, including filing the petition for judicial review, are similarly void and without effect. Accordingly, Kinder Morgan takes the position that no appeal from the ARB's order was timely perfected under Section 42.031 of the Tax Code and, as a result, the trial court's jurisdiction has not been timely invoked.[23] Because the validity of counsel's employment contract was neither preserved in the courts below nor fairly included in issues that were, we consider the matter only to the extent it implicates subject-matter jurisdiction over the judicial-review suit.[24]

## II. Discussion

### A. Subject-Matter Jurisdiction

Under separately executed contracts, the Taxing Units hired the same attorney to "investigate and review potential errors/irregularities and to pursue any Claims identified against Commercial Entities . . . who may be responsible [for] inaccurate valuations of mineral interest real property and erroneous or insufficient ad valorem tax payment amounts[.]" The attorney-employment contracts set counsel's compensation at 20% of gross recoveries. The terms of the contracts are undisputed, but the nature of the services, the validity of the contracts, and the effect of any invalidity on the otherwise timely initiated Section 42.031 appeal are hotly contested.

### 1. The Parties Arguments

Kinder Morgan argues that (1) the Taxing Units' attorney was engaged as a "tax ferret" under unapproved—and therefore void—contingent-fee agreements, (2) a void contract cannot be ratified by the Taxing Units, so the attorney's actions under the tax ferret contracts also cannot be

---

[23] *See* TEX. TAX. CODE § 42.21(a) ("Failure to timely file a petition bars any appeal under this chapter."); *Appraisal Review Bd. v. Int'l Church of Foursquare Gospel*, 719 S.W.2d 160, 160 (Tex. 1986) ("Compliance with § 42.21 is jurisdictional.").

[24] *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445 (Tex. 1993) ("Subject matter jurisdiction is an issue that may be raised for the first time on appeal; it may not be waived by the parties.").

9

ratified, and (3) the attorney's filings on behalf of the Taxing Units were therefore ineffective to invoke the trial court's jurisdiction.[25] In arguing the attorney-employment contracts are void, Kinder Morgan contends that, except in a limited circumstance not applicable here, the Taxing Units had no express or implied authority to engage a so-called tax ferret on a contingent-fee basis and one of the taxing units, Scurry County, had no authority to procure legal services on a contingent-fee basis without prior review and approval by the State Comptroller. For its jurisdictional challenge, Kinder Morgan contends the Taxing Units did not perfect their administrative appeal because they purported to prosecute that appeal through a void contract with their attorney.

A "tax ferret contract" has been defined as an agreement to locate property that has been omitted from the tax rolls.[26] Public policy concerns arise when a tax ferret contract places a bounty on recoveries. Such contingent-fee engagements provide the potential for excessive and

---

[25] To prove the point, Kinder Morgan's merits brief included select documents pertaining to a different judicial-review proceeding in Pecos County in which Kinder Morgan filed a Rule 12 motion challenging the same attorney's authority to represent different taxing units under a similar contingent-fee contract. After sustaining the Rule 12 challenge on the basis that the contingent-fee contract was void, the Pecos County trial court disqualified the attorney, and when no attorney authorized to prosecute appeared, the court struck the taxing units' pleadings and dismissed the appeal for want of subject-matter jurisdiction. *See* TEX. R. CIV. P. 12 (providing that, when properly challenged, if an attorney fails to show authority to prosecute or defend a pending suit, "the court shall refuse to permit the attorney to appear in the cause, and shall strike the pleadings if no person who is authorized to prosecute or defend appears"). Kinder Morgan asserts this action should also be dismissed for lack of subject-matter jurisdiction because the cases are "nearly identical." The Pecos County proceeding is currently on appeal to the Eighth Court of Appeals. *See* Cause No. 08-20-00122-CV, *Iraan-Sheffield Indep. Sch. Dist. v. Pecos Cty. Appraisal Dist.* We express no opinion on the matter because, in this case, Kinder Morgan has not challenged the attorney's authority under Rule 12 and the pleadings below have not been stricken. The issue here is whether the petition for judicial review was void *ab initio*, not whether the trial court lost jurisdiction when pleadings were stricken.

[26] *White v. McGill*, 114 S.W.2d 860, 861 (Tex. 1938) (a "tax ferret contract" involves services "in the way of pointing out property for taxation" such as the contract at issue which imposed a duty to identify "property [that] is not on the County tax rolls and has never been discovered or found by [the tax assessor collector]"); Tex. Att'y Gen. Op. JC-0290 (2000) (defining a "tax ferret contract" as one in which "a private entity contracts with a taxing unit to locate property omitted from the tax rolls"); *see also Crosby v. P.L. Marquess & Co.*, 226 S.W.2d 461, 463-64 (Tex. App.—Beaumont 1950, writ ref'd n.r.e.) ("This contract did not obligate the [M]arquess Company to secure information as to whether any property had been rendered for taxation or not. It was not the type of contract which is commonly referred to as a 'tax ferret contract'.").

unreasonable compensation out of tax revenues that would otherwise support the public fisc.[27] Contingent-fee arrangements also provide pernicious incentives to maximize recovery in ways that may be abusive, coercive, or harassing. Fifty years have elapsed since the last time this Court had occasion to consider whether an impermissible tax ferret contract was in play,[28] and before that, we decided only one other contingent-fee tax ferret case.[29] Both opinions were issued long before the Tax Code was enacted in 1979.

Because contingent-fee arrangements can be unfair and unjust to the public, the Legislature has expressed a special interest in closely regulating certain contingent-fee contracts between governmental entities and private parties. For example, Section 6.30 of the Tax Code permits a taxing unit to "contract with any competent attorney to represent the unit to enforce the collection of delinquent taxes" provided that "[t]he attorney's compensation is set in the contract" and "does not exceed 20 percent of the amount of delinquent tax, penalty, and interest collected."[30] A contract that does not conform to those requirements is void.[31]

In 1999, the Legislature also amended Chapter 2254, Subchapter C of the Government Code[32] to add procedural safeguards for contingent-fee agreements between governmental entities and private parties with respect to legal services, excluding those contracts governed by Section 6.30 (among others).[33] Since 2007, and at the time the Taxing Units engaged counsel in

---

[27] *White*, 114 S.W.2d at 862-63.

[28] *Pritchard & Abbott v. McKenna*, 350 S.W.2d 333, 338 (Tex. 1961) (holding that Galveston County's contract with a private appraisal firm which had the "only purpose and objective" of ensuring "'that all properties may be properly valued for the purpose of taxation and values thereof equalized'" was not a tax ferret contract).

[29] *White*, 114 S.W.2d at 863-64 (contingent-fee tax ferret contract violated a statute that capped contingent-fee rate, required the Comptroller's and Attorney General's approval, and stated any noncompliant contract was void).

[30] Tex. Tax Code § 6.30(c).

[31] *Id.* § 6.30(e).

[32] Tex. Gov't Code §§ 2254.101–.110.

[33] *See id.* §§ 2254.101–.103, .106–.107.

11

this matter, no "public agency"—as specially defined—could execute a legal-services contract on a contingent-fee basis absent the Comptroller's review and approval.[34]  In 2019, more than a year after the Taxing Units hired counsel in this case, the Legislature expanded and modified that prohibition by amending Subchapter C to require all political subdivisions to obtain the Attorney General's approval before a contingent-fee contract for legal services is effective and enforceable.[35]  At the same time, the Legislature added another provision providing that a contract violating Subchapter C "is void as against public policy, and no fees may be paid to any person under the contract or under any theory of recovery for work performed in connection with a void contract."[36]  This section of the Government Code also purports to insulate any contract approved by the Attorney General from later being declared void.[37]

The Taxing Units take umbrage at the suggestion that a legal services contract to investigate the undervaluation of taxable property is properly characterized as a "tax ferret contract" because even though property undervalued due to taxpayer fraud might be considered "omitted" from the tax rolls, correcting an undervaluation is not the same as uncovering property that has been entirely overlooked by the taxing authorities.  But the real nub of disagreement concerns the express or implied authority, and necessity of prior approval, to engage such services

---

[34] Act of May 27, 2007, 80th Leg., R.S., ch. 937, § 3.07, 2007 Tex. Gen. Laws 3207, 3233, *repealed by* Act of May 20, 2019, 89th Leg., R.S., ch. 857, § 9, 2019 Tex. Gen. Laws 2321, 2321 ("A public agency as defined under Section 30.003(3), Water Code, may not enter into a contract as provided by Subchapter C, Chapter 2254, without review and approval by the comptroller.").  For purposes of this prohibition, "public agency" was defined as "any district, city, or other political subdivision or agency of the state which has the power to own and operate waste collection, transportation, treatment, or disposal facilities or systems, and any joint board created under the provisions of Subchapter D or E, Chapter 22, Transportation Code."  *Id.* (adopting the definition of "public agency" from Section 30.003(3) of the Water Code).

[35] TEX. GOV'T CODE § 2254.1038. A "political subdivision" includes "a district, authority, county, municipality, or other political subdivision of the state[.]"  *Id.* § 2254.101(2-a) (incorporating the definition from Section 2254.002(1)(B), (C), and (D)).

[36] *Id.*

[37] *Id.*

(however they are labeled) on a contingent-fee basis and the effect of any noncompliance with statutory requisites on the Taxing Units' ability to maintain the judicial-review suit. As to those matters, the Taxing Units assert, among other arguments, that the contracts are valid because (1) Section 6.30 expressly permits contingent-fee agreements to collect "delinquent taxes" without prior approval, and (2) the provisions in Chapter 2254 requiring political subdivisions to obtain approval for contingent-fee contracts are inapplicable because they were enacted after the attorney-employment contracts' effective dates. Even if some or all of the contingent-fee contracts are void, as Kinder Morgan asserts, the Taxing Units maintain that the only effect would be to deny counsel compensation under the contracts, not to prohibit counsel's continued representation under different compensation terms nor to invalidate actions taken in the scope of that representation.

Because this issue was raised for the first time on appeal, we consider only whether a jurisdictional impediment bars the Taxing Units' judicial-review suit.[38] To that end, we need not determine whether counsel is a tax ferret, whether any or all of the contingent-fee contracts are void for want of Comptroller or Attorney General approval, or whether counsel is disqualified from continued representation on that basis or any other because even if the contracts are void, that circumstance alone does not nullify the Taxing Units' bona fide attempt to invoke the trial court's jurisdiction over their appeal from the ARB's order denying the challenge petitions. Accordingly, we assume, without deciding, that the Taxing Units engaged legal counsel under impermissible contingent-fee engagements.

---

[38] *See Bonsmara Nat. Beef Co., LLC v. Hart of Tex. Cattle Feeders, LLC*, 603 S.W.3d 385, 391-93 (Tex. 2020) (addressing jurisdictional argument raised for the first time on appeal); *Tex. Ass'n of Bus. v. Tex. Air Control Bd*., 852 S.W.2d 440, 445 (Tex. 1993) (subject-matter jurisdiction may not be waived).

13

## 2. Defective But Not Void

The Tax Code entitles taxing units "to challenge before the appraisal review board . . . an exclusion of property from the appraisal records"[39] and has been construed as "provid[ing] a remedy for an erroneous appraisal based on property that escaped taxation because of a void assessment arising from taxpayer fraud."[40] A taxing unit is "*entitled* to appeal" the appraisal review board's order determining the challenge.[41] Kinder Morgan does not challenge the Taxing Units' standing or competency to appeal. Nor does Kinder Morgan contend the petition for judicial review is invalid as a perfecting instrument for any other reason than in regard to the attorney's authority to sign and file it on the Taxing Units' behalf. Likewise, Kinder Morgan does not contend that the petition for judicial review was filed in anything other than a good-faith effort to perfect an appeal and invoke the trial court's jurisdiction.

In *Grand Prairie Independent School District v. Southern Parts Imports, Inc.*, we held that "a court of appeals may not dismiss an appeal when the appellant filed the wrong instrument required to perfect the appeal without giving the appellant an opportunity to correct the error."[42] There, the appellant had filed a notice of appeal instead of an appeal bond.[43] The court of appeals denied leave to file an appeal bond, as required to perfect the appeal, and dismissed the appeal for want of jurisdiction.[44] We reversed and held that "[a] court of appeals has jurisdiction over any

---

[39] Act of May 22, 1999, 76th Leg., R.S., ch. 631, § 7, 1999 Tex. Gen. Laws 3191, 3196 (amended 2019) (current version at TEX. TAX CODE § 41.03(a)(1)).

[40] *Willacy Cty. Appraisal Dist. v. Sebastian Cotton & Grain, Ltd.*, 555 S.W.3d 29, 50 (Tex. 2018) (quoting *Beck & Masten Pontiac–GMC, Inc. v. Harris Cty. Appraisal Dist.*, 830 S.W.2d 291, 295 n.3 (Tex. App.—Houston [14th Dist.] 1992, writ denied), which interpreted TEX. TAX CODE § 25.21).

[41] TEX. TAX CODE § 42.031(a) (emphasis added).

[42] 813 S.W.2d 499, 500 (Tex. 1991).

[43] *Id.* at 499.

[44] *Id.* at 499-500.

14

appeal where the appellant files an instrument that 'was filed in a bona fide attempt to invoke appellate court jurisdiction,'"[45] and if a document filed under such circumstances is faulty, the appellate court must afford the appellant an opportunity to amend or refile any instrument required by the law or our rules to perfect the appeal.[46] The critical inquiry in determining whether an appeal has been perfected is not whether there has been an error of form or substance but whether the instrument was filed in a good-faith attempt to appeal.[47]

Application of the foregoing principle to the circumstances here is consistent with case law recognizing that court documents filed by a nonlawyer on behalf of a litigant are considered to be "defective but not void, and may be effective for certain purposes[.]"[48] For this reason, even if the Taxing Units' lawyer had no authority to act as their lawyer, the Taxing Units are not deprived of their statutory right to appeal by voidness of the legal-services engagement, if any. A bona fide effort to invoke the trial court's jurisdiction may be defective, but it is not void, and the proceedings cannot be dismissed without affording an opportunity to refile a proper instrument, if necessary.

Our conclusion that any lack of authority does not perforce invalidate the timely filed petition for judicial review comports with Texas Rule of Civil Procedure 12, which Kinder Morgan invoked to challenge the same counsel on the same basis in a different judicial-review

---

[45] *Id.* at 500 (quoting *Walker v. Blue Water Garden Apartments*, 776 S.W.2d 578, 581 (Tex. 1989)).

[46] *Id*.

[47] *See id.*; *Walker*, 776 S.W.2d at 581; *accord* TEX. R. APP. P. 44.3 ("A court of appeals must not . . . dismiss an appeal for formal defects or irregularities in appellate procedure without allowing a reasonable time to correct or amend the defects or irregularities.").

[48] *Rabb Int'l, Inc. v. SHL Thai Food Serv., LLC*, 346 S.W.3d 208, 210 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (holding that motion for new trial filed by nonlawyer was not void and was effective to extend deadline to perfect an appeal); *see, e.g.*, *Kunstoplast of Am., Inc. v. Formosa Plastics Corp., USA*, 937 S.W.2d 455, 456 (Tex. 1996) (holding that nonlawyer corporate officer could perform the ministerial duty of filing a bond necessary to perfect an appeal for a corporation, which must otherwise be represented by legal counsel); *Guadalupe Econ. Servs. Corp. v. Dehoyos*, 183 S.W.3d 712, 717 (Tex. App.—Austin 2005, no pet.) (holding that answer purportedly filed on behalf of corporation by a nonlawyer, though defective, still prevented the trial court from granting a default judgment).

15

proceeding.[49]  While Rule 12 requires the trial court to dismiss counsel who fails to show authority to prosecute or defend the proceeding, pleadings filed by any such counsel are not nullified and may only be stricken "if no person who is authorized to prosecute or defend appears."[50]

Here, the Taxing Units have a statutory right to appeal the ARB's decision on their challenges and hired a licensed attorney to file the documents necessary to exercise their statutory right.  Even assuming the attorney-employment contracts are void, deeming an otherwise timely and properly perfected appeal to be unperfected would elevate form over substance, contrary to the principles discussed above.[51]  If counsel is disqualified and if pleadings are stricken, consequences may ensue, and those consequences could have the same effect that Kinder Morgan seeks to achieve here.  But there is a legally significant difference between a pleading that has been stricken and one that was void *ab initio*.  The petition for judicial review filed on behalf of the Taxing Units to perfect their statutory right to appeal is not void, and to the extent it is properly characterized as defective, the appeal could not be dismissed without affording the Taxing Units a reasonable opportunity to refile the necessary perfecting instrument.[52]

Finding no jurisdictional impediment to reaching the merits of this appeal, we turn now to the issue decided by the courts below: whether Kinder Morgan's TCPA motion to dismiss was timely filed.

---

[49] *See supra* note 25.

[50] *See* TEX. R. CIV. P. 12; *see also City of San Antonio v. River City Cabaret, Ltd.*, 32 S.W.3d 291, 292-93 (Tex. App.—San Antonio, pet. denied) (holding trial court had no discretion to dismiss lawsuit once an authorized person appeared to prosecute the lawsuit, even though such authorization occurred after the lawsuit was filed and after the hearing on the Rule 12 motion).

[51] *See Walker*, 776 S.W.2d at 581.

[52] Our holding today is without comment on, and without prejudice to, Kinder Morgan's right to invoke Rule 12 or pursue other disqualification proceedings in the trial court and the Taxing Units' right to pursue any viable defenses.

## B. TCPA Motion to Dismiss

The TCPA's purpose is to safeguard "the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law" without impairing a person's right "to file meritorious lawsuits for demonstrable injury."[53] Among the balancing measures the Act employs is a deadline for seeking dismissal under the statute. Absent an extension,[54] a TCPA motion must be filed within sixty days after service of a "legal action" that "is based on, relates to, or is in response to a party's exercise of the right of free speech, right to petition, or right of association[.]"[55] In the applicable version of the statute, a "legal action" is broadly defined as "a lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal or equitable relief."[56] The issue in this case is whether the Taxing Units' original petition for judicial review pleaded a "legal action" that triggered the TCPA's sixty-day filing window with respect to the subsequently pleaded taxpayer-fraud allegations or whether the assertion of those allegations in an amended petition restarted the clock. Kinder Morgan contends the second amended petition asserted a new legal action by adding a new "cause of action." The TCPA does not define the term "cause of action,"

---

[53] TEX. CIV. PRAC. & REM. CODE § 27.002.

[54] Under the prior version of the statute, only the trial court could grant an extension and only based on good cause. Act of May 18, 2011, 82d Leg., R.S., ch. 341, § 2, 2011 Tex. Gen. Laws 961, 962 (amended 2019) (current version at TEX. CIV. PRAC. & REM. CODE § 27.003(b)). Now, the parties may also agree to an extension. TEX. CIV. PRAC. & REM. CODE § 27.003(b).

[55] Act of May 18, 2011, 82d Leg., R.S., ch. 341, § 2, 2011 Tex. Gen. Laws 961, 962 (amended 2019) (current version at TEX. CIV. PRAC. & REM. CODE § 27.003(a), (b)). As currently enacted, the phrase "relates to" is no longer part of the statutory standard, but now, a motion may also be filed if a legal action "arises from any act of that party in furtherance of the party's communication or conduct described by Section 27.010(b)." TEX. CIV. PRAC. & REM. CODE § 27.003(a).

[56] Act of May 18, 2011, 82d Leg., R.S., ch. 341, § 2, 2011 Tex. Gen. Laws 961, 962 (amended 2019) (current version at TEX. CIV. PRAC. & REM. CODE § 27.001(6)). The current version of the statute includes requests for "declaratory[] or equitable relief" but excludes other specific types of matters from the term, including alternative-dispute-resolution proceedings and post-judgment enforcement actions. TEX. CIV. PRAC. & REM. CODE § 27.001(6).

but "the generally accepted meaning of that phrase refers to the 'fact or facts entitling one to institute and maintain an action, which must be alleged and proved in order to obtain relief.'"[57]

In our contemporaneously issued opinion in *Montelongo v. Abrea*, we examine a TCPA case involving an amended petition that added new legal claims based on the same essential facts that had been alleged in the original petition.[58] This case presents the inverse scenario—an amended petition that added new factual allegations to support a previously asserted legal claim under the Tax Code—but *Montelongo* is nonetheless instructive here. In answering whether, and under what circumstances, an amended or supplemental pleading restarts the sixty-day period for filing a TCPA dismissal motion, *Montelongo* explains that

> an amended or supplemental pleading that asserts the same legal claims or theories by and against the same parties and based on the same essential facts alleged in a prior pleading asserts the same 'legal action' to which the sixty-day period previously applied and thus does not trigger a new sixty-day period for filing a dismissal motion.[59]

But if an amended or supplemental pleading

> (1) adds a new party or parties, (2) alleges new essential facts to support previously asserted claims, or (3) asserts new legal claims or theories involving different elements than the claims or theories previously asserted, the new pleading asserts a new legal action and triggers a new sixty-day period *as to those new parties, facts, or claims*.[60]

Applying *Montelongo* here yields the conclusion that a new sixty-day window commenced from the addition of facts alleging taxpayer-fraud because the original petition did not put Kinder Morgan on notice that the Taxing Units were implicating Kinder Morgan in wrongdoing with respect to the reappraisal claim. The factual allegations of taxpayer fraud added in the second

---

[57] *See, e.g.*, *Laoisiga v. Cerda*, 379 S.W.3d 248, 255 (Tex. 2012) (quoting *In re Jorden*, 249 S.W.3d 416, 421 (Tex. 2008) (orig. proceeding)).

[58] ___ S.W.3d ___, ___ (Tex. 2021) [Cause No. 19-1112, slip op at 1-2].

[59] *Id.* at ___ [slip op at 2].

[60] *Id.* (emphasis added).

18

amended petition are "new essential facts" to support the claim of "erroneous[] and incorrect[]" omission of property asserted in the original petition.

Taxable property that is considered omitted *ab initio* from the taxing rolls due to taxpayer fraud is an alternative theory that could support the reappraisal request the Taxing Units seek. But, as the court of appeals acknowledged, it is not the only theory. More significantly, charging the taxpayer with "knowingly and purposefully provid[ing] inaccurate and/or incomplete information to be relied upon by [the county's appraiser] in an effort to evade payment of taxes" is not a subset of essential factual allegations in the original petition because the original petition contains no essential factual allegations *at all* to support the reappraisal claim. Rather, the petition asserts a broad claim for reappraisal without any of the facts that must be alleged or proved to obtain relief. The original petition did not fairly plead a cause of action for reappraisal based on taxpayer fraud.

A cause of action is sufficiently pleaded only if the petition gives fair notice of the claim involved.[61] "The key inquiry is whether the opposing party 'can ascertain from the pleading the nature and basic issues of the controversy and what testimony will be relevant.'"[62] Our notice-pleading rules require pleadings to not only give notice "of the claim and the relief sought" but also of the essential factual allegations.[63] "The purpose of this rule is to give the opposing party information sufficient to enable him to prepare a defense."[64] To paraphrase from

---

[61] TEX. R. CIV. P. 47(a); *DeRoeck v. DHM Ventures, LLC*, 556 S.W.3d 831, 835 (Tex. 2018).

[62] *DeRoeck*, 556 S.W.3d at 835 (quoting *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896 (Tex. 2000)).

[63] ___ S.W.3d ___, ___ (Tex. 2021) [Cause No. 19-1112, slip op at 12] (quoting TEX. R. CIV. P. 47(a), *In re Lipskey*, 460 S.W.3d 579, 590 (Tex. 2015) (orig. proceeding), and *Auld*, 34 S.W.3d at 896). Our rules of civil procedure state that "[a]n original pleading which sets forth a claim for relief . . . *shall contain* . . . a short statement of the *cause of action* sufficient to give fair notice of the claim involved." TEX. R. CIV. P. 47(a) (emphases added). As we have explained many times, a "cause of action" means the "fact or facts entitling one to institute and maintain an action, which must be alleged and proved in order to obtain relief." *E.g.*, *Laoisiga v. Cerda*, 379 S.W.3d 248, 255 (Tex. 2012) (quoting *In re Jorden*, 249 S.W.3d 416, 421 (Tex. 2008) (orig. proceeding)).

[64] *Roark v. Allen*, 633 S.W.2d 804, 810 (Tex. 1982).

19

*Montelongo*, providing only fair notice of claims does not provide fair notice of the essential factual allegations supporting those claims.[65]

The original petition for judicial review pleaded that:

[M]ineral interest real property of the Kinder Morgan Entities in Scurry County was erroneously and incorrectly omitted from appraisal for years 2018, and 2013–2017 and [] accurate values should be determined by [the trial court]. *Beck & Masten Pontiac-GMC, Inc. v. Harris Co. Appraisal Dist.*, 830 S.W.2d 291, 294-95 (Tex. App.—Houston [14th Dist.] 1992, writ denied)[.]

[] The Taxing Units also assert that re-appraisal for year 2018 and back-appraisal for years 2013–2017 is required of the Scurry County Appraisal District as to the mineral interest real property of the Kinder Morgan Entities in Scurry County. *Atascosa Co. v. Atascosa Co. Appraisal Dist.*, 990 S.W.2d 255, 257 (Tex. 1999); *In re ExxonMobil Corp.*, 153 S.W.3d 605, 619 (Tex. App.—Amarillo 2004 [sic]); Tex. Tax Code Ch. 25, 41.

. . . .

The omission of properties, *in toto* or *ab initio*, was brought to the attention and knowledge of the Chief Appraiser of the Scurry County Appraisal District as to the mineral interest real property of the Kinder Morgan Entities in Scurry County for the time period 2013–2018. Despite having a mandatory and ministerial duty to re-appraise [sic] and back-appraise the mineral interest real property, the Chief Appraiser and the Scurry County Appraisal District have failed to take such action.

Noticeably absent are any allegations with respect to Kinder Morgan other than its identification as the property owner—a fact that makes it an essential party to the proceeding but does not inform the factual basis supporting the reappraisal claim. The petition includes no allegations that the alleged tax deficiency resulted from *any* conduct on Kinder Morgan's part, let alone that any rights protected by the TCPA might be implicated.[66] Just as essential factual allegations may give rise to a variety of different legal theories, legal theories may be supported by a variety of different

---

[65] ___ S.W.3d ___, ___ (Tex. 2021) [Cause No. 19-1112, slip op at 12].

[66] *See Fairdale Ltd. v. Sellers*, 651 S.W.2d 725, 726 (Tex. 1982) ("The petition does not allege that Sellers contracted with Fairdale, that Fairdale built the townhome, that Fairdale provided or installed the cabinets, that Fairdale was responsible for the hidden or latent defects, or that Fairdale warranted the cabinets. In fact, there is no allegation in the petition of any duty owed by Fairdale to Sellers or an allegation of a breach of any duty. Therefore, the petition does not state a cause of action against Fairdale.").

factual scenarios. The pleading of a legal theory, without more, does not provide notice of the facts that could be pleaded to support that theory. For that reason, we cannot agree with the court of appeals that a theory of taxpayer fraud being a subset of potential omission claims satisfied the notice-pleading rules and, therefore, we cannot agree that the amended pleading added no new essential facts.

Nor is it sufficient, as the Taxing Units suggest, that Kinder Morgan could (or should) have deduced from extrinsic sources that the Taxing Units were pursuing reappraisal based on Kinder Morgan's alleged fraud in its communications with the appraisal district. The original petition cites *Beck & Masten*, *Exxon Mobile*, and *Atascosa* without elaboration. *Beck & Masten* allowed the appraisal district to reappraise omitted property due to fraud committed by the property owner.[67] In *ExxonMobil*, the court of appeals required local taxing units to pursue allegations of taxpayer fraud before the appraisal review board rather than as common-law fraud claims in the district court because the review board had exclusive original jurisdiction over the taxing authorities' valuation claims and "failing a satisfactory result at the appraisal review board, *de novo* judicial review [is] available."[68] *Atascosa* stands for the proposition that property omitted due to the appraiser's error of classifying it as exempt can be back-appraised for the five previous years.[69]

Both *Beck & Masten* and *ExxonMobil* involve a taxing unit's claim for back-appraisal based on a taxpayer's alleged misrepresentations. But the citation of these cases does not equate

---

[67] *See Beck & Masten Pontiac-GMC, Inc. v. Harris Cty. Appraisal Dist.*, 830 S.W.2d 291, 295 (Tex. App.—Houston [14th Dist.] 1992, writ denied).

[68] *In re ExxonMobil Corp.*, 153 S.W.3d 605, 614, 618 (Tex. App.—Amarillo 2004, orig. proceeding).

[69] *Atascosa County v. Atascosa Cty. Appraisal Dist.*, 990 S.W.2d 255, 260 (Tex. 1999).

21

to fair notice of the essential factual allegations giving rise to a claim for relief because, as we have held,

> [i]n determining whether a cause of action was pled, plaintiff's pleadings must be adequate for the court to be able, *from an examination of the plaintiff's pleadings alone*, to ascertain with reasonable certainty and without resorting to *information aliunde*[70] the elements of plaintiff's cause of action and the relief sought with sufficient information upon which to base a judgment.[71]

The Taxing Units' original petition fails to give Kinder Morgan fair notice of the essential facts supporting an allegation that the alleged omission resulted from Kinder Morgan's conduct. Based on the allegations in the original petition alone, Kinder Morgan could not have ascertained that the basic issue of the controversy was its alleged misrepresentations to SCAD's appraiser.[72] The court of appeals and trial court therefore erred in holding that Kinder Morgan's TCPA motion to dismiss, which was filed within sixty days after service of a legal action asserting new essential facts, was untimely.

### III. Conclusion

We hold that Kinder Morgan's TCPA motion to dismiss was timely filed. Accordingly, we reverse the court of appeals' judgment and remand to the trial court without reaching Kinder Morgan's alternative argument that good cause exists for an extension. Our conclusion that Kinder Morgan satisfied the TCPA's timeliness requirement should not be construed as a comment on the

---

[70] *Aliunde*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("From another source; from elsewhere[.]").

[71] *Stoner v. Thompson*, 578 S.W.2d 679, 683 (Tex. 1979) (emphases added); *see Fairdale*, 651 S.W.2d at 725 ("In determining [whether] a cause of action has been pleaded, the court must be able to determine *from the pleadings alone* the elements of the cause of action and the relief sought with reasonable certainty and without resorting to other sources." (emphasis added)).

[72] *See DeRoeck v. DHM Ventures, LLC*, 556 S.W.3d 831, 835 (Tex. 2018) (quoting *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896 (Tex. 2000)).

TCPA's applicability to the legal action.  That issue was not presented on appeal and remains to be determined.

_____
Eva M. Guzman
Justice

**OPINION DELIVERED:** April 30, 2021